UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:24-cv-24453-KMW

PROPERTY TAX CONSULTANTS, LLC,
a Florida limited liability company,

        Plaintiff,

v.

TAX SAVERS OF MIAMI, INC., a Florida
corporation, and LAWRENCE PUYANIC,
an individual,

        Defendants.

_____/

## AMENDED COMPLAINT

Plaintiff, Property Tax Consultants, LLC ("Property Tax Consultants" or "Plaintiff"), by and through undersigned counsel, files its Amended Complaint against the Defendants Tax Savers of Miami, Inc. ("Tax Savers") and Lawrence Puyanic ("Puyanic"), and alleges as follows:

## INTRODUCTION

1. Backed by practitioners with long term experience (one as far back as 1982), Property Tax Consultants represents owners of real and tangible personal property in connection with, *inter alia*, property tax appeals.

2. Firms that provide these services customarily send marketing literature to current and prospective clients in the months leading up to the deadline to submit property tax appeals.

3. This action concerns false or misleading claims made by the Defendants on their website and in connection with advertisements issued in 2024. The false or misleading claims include representations about success rates and other information that is material to clients or prospective clients when make decisions about the hiring of a firm to handle property tax matters.

## NATURE OF THE ACTION

4. This is an action seeking injunctive and other relief as a result of the Defendants' (a) false and misleading advertising, unfair competition, and false misrepresentation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a); (b) unfair and/or deceptive trade practices in violation of Fla. Stat. §501.201, *et seq.*; (c) misleading advertising in violation of Fla. Stat. §817.41; and (d) tortious interference with Plaintiff's advantageous business relationships.

## THE PARTIES

5. Plaintiff is a limited liability company duly organized under the laws of the State of Florida, with a principal place of business in this District at 1484 E. Hallandale Beach Boulevard, Hallandale, Florida 33009.

6. Defendant Tax Savers is a for-profit corporation registered in the State of Florida, with a principal place of business at 717 Ponce de Leon Boulevard, Suite 330, Coral Gables, Florida 33134.

7. Defendant Puyanic is an individual with an address at 717 Ponce de Leon Boulevard, Suite 330, Coral Gables, Florida 33134.

8. At all times material hereto, Tax Savers has been conducting business in this District, primarily in Miami-Dade County and Broward County.

9. Defendant Puyanic is the President of Defendant Tax Savers. Upon information and belief, he has the capacity to control the acts of Defendant Tax Savers; supervises and has the ability to supervise the acts complained of against Defendant Tax Savers; has induced, has caused, and/or is a motivating force behind the acts set forth herein; and has a financial interest in and/or actually participated in said acts.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331. This Court also has jurisdiction pursuant to the doctrine of supplemental jurisdiction, as set forth in 28 U.S.C. §1367.

11.    Personal jurisdiction is proper over the Defendants because the Defendants reside in this District.

12.    Personal jurisdiction is proper over the Defendants because:

   a.   Defendants are engaged in substantial and not isolated activity within the State of Florida and this District, within the meaning of Fla. Stat. §48.193(2); and/or

   b.   Defendants have operated, conducted, engaged in, or carried on a business or business venture in the State of Florida and this District, from which this action arises, within the meaning of Fla. Stat. §48.193(2); and/or

   c.   Defendants have maintained an office or agency in the State of Florida and this District, within the meaning of Fla. Stat. §48.193(2); and/or

   d.   Defendants have committed tortious acts within the State of Florida and this District, including the false advertising, unfair trade practices, and tortious interference set forth herein, within the meaning of Fla. Stat. §48.193(2).

13.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b)-(c) for the following reasons:

   a.   All Defendants reside in this District; and/or

   b.   All Defendants are subject to personal jurisdiction in this District; and/or

   c.   a substantial part of the events or acts giving rise to the claims alleged herein occurred in this District; and/or

d.  the acts complained of are being committed or have been committed in this District.

## FACTUAL ALLEGATIONS

14.  Plaintiff and Defendants are competitors in the property tax assessment appeal business, offering those services to residential and commercial clients.

15.  Defendants have commenced publishing, circulating, and disseminating written advertisements and communications as set forth hereinafter with greater particularity. *See* **Exhibit A**.

16.  The advertisements and communications published by Defendants in commerce contain information that is false or stated in a way as to be misleading by misrepresenting the qualities of Defendants' services, and which Defendants knew or should have known to be false.

### *Defendants Misrepresent Results and Experience*

17.  Defendants have made numerous false or misleading representations to consumers regarding the nature or effectiveness of their services. These include:

a.  making the false or misleading claim in their advertising that, in 2023, Tax Savers had "an industry-leading **success rate of 85%** for properties valued at over $1 million across retail, multi-family, and industrial asset classes," when the actual success rate was nearly **30% lower** at 57.84%, as shown in the table in Paragraph 19, below.

b.  making the false or misleading claim in their advertising that, in 2023, Tax Savers had "an industry-leading **success rate of 70%** for properties valued at over $500,000 across single family, condominium, and multi-family asset classes," when the actual success rate was **over 20% lower** at 49.57%, as shown in the table in Paragraph 19, below.

c.  making the false or misleading claim in their advertising that, in 2023, Tax Savers had "an industry-leading **success rate of 70%** with vacant land," when the actual success rate was **over 15% lower** at 54.71%, as shown in the table in Paragraph 19, below.

   d. making the false or misleading claim in their advertising that Tax Savers
    has handled "250,000+ successful property tax appeals."

### *Defendants' Published "Success Rates" are Intentionally Misleading*

  18. Defendants claim in the challenged advertisements to have an "industry-leading success rate of 70% or 85%, depending on the advertisement or class of properties. *See* **Exhibit A**.

  19. The available data from the Value Adjustment Boards of Miami-Dade and Broward Counties demonstrates that the Defendants' claimed success rates are false or misleading, in that the actual success rates are lower than the ones advertised, as shown below.

| Property Type | Reduced Petitions in Miami-Dade | Total Petitions in Miami-Dade | Percentage in Miami-Dade | Reduced Petitions in Broward | Total Petitions in Broward | Percentage in Broward | Overall Percentage |
|---|---|---|---|---|---|---|---|
| VACANT LAND | 301 | 456 | 66.01% | 1 | 96 | 1.04% | 54.71% |
| | | | | | | | |
| | | Tax Savers Claim | 70% | | | | |
| **$500k+** | | | | | | | |
| SINGLE FAMILY | 239 | 533 | 44.84% | 91 | 210 | 43.33% | 44.41% |
| CONDO | 277 | 527 | 52.56% | 28 | 86 | 32.56% | 49.76% |
| MULTI FAMILY | 545 | 785 | 69.43% | 83 | 407 | 20.39% | 52.68% |
| TOTALS | 1,061 | 1,845 | 57.51% | 202 | 703 | 28.73% | |
| | | | | | | | |
| | | Overall Percentage | 49.57% | | | | |
| | | Tax Savers claim | 70% | | | | |
| **$1m+** | | | | | | | |
| MULTI FAMILY | 283 | 359 | 78.83% | 41 | 187 | 21.93% | 59.34% |
| INDUSTRIAL | 253 | 284 | 89.08% | 85 | 287 | 29.62% | 59.19% |
| RETAIL | 192 | 255 | 75.29% | 31 | 158 | 19.62% | 54.00% |
| TOTAL | 728 | 898 | 81.07% | 157 | 632 | 24.84% | |
| | | | | | | | |
| | | Overall percentage | 57.84% | | | | |
| | | Tax Savers claim | 85% | | | | |

  20. Defendants' false and misleading statements as to the success rates, which have been touted in commerce through Defendants' website and advertisements/solicitations, have

deceived or have the tendency to deceive the intended audience and consuming public about matters that are material to buyers' purchasing decisions. Defendants' false and misleading statements were also intended to harm Plaintiff's interests by seeking to persuade and misdirect customers and potential customers of Plaintiff's services to instead engage the Defendants for competing services.

### *Defendants Make False or Misleading Statements of Fact Regarding Their Business*

21.     In addition to inflated success rates, Defendants make various claims in the challenged advertisements that, upon information and belief, are untrue and designed to persuade prospective customers to engage the Defendants, in order to increase the Defendants' profits at the expense of competitors that engage in fair competition.

22.     Defendants' disseminated marketing materials (*e.g.*, **Exhibit A**) directs consumers to the Defendants' active website (**Exhibit C**), which contains untrue, exaggerated, and/or intentionally misleading claims regarding Defendants' services.

23.     Specifically, Defendants have claimed in the challenged marketing to have had over 250,000 *successful* appeals. *See* **Exhibit A**; *see also* **Exhibit C**.

24.     On information and belief, Tax Savers has not handled 250,000 **total** property tax appeals, let alone over that many *successful* appeals.

25.     Defendants' website states that Tax Savers was "[f]ounded in 1989" and handles "5,000 to 8,000 petitions a year" in Miami-Dade and Broward County. *See* **Exhibit C**.

26.     In order to claim success in over 250,000 appeals, the Defendants would have had to average somewhere in the range of 7,142 *successful* appeals every year for the last 35 years.

27.     To the extent Defendants were to claim that the word "success" has other meanings in connection with their business — such a contention is baseless.

28.     Indeed, the Defendants' own website concedes that "success" is based on "lowering your tax bill," which the Defendants admit is their "revenue model:"



29.     Upon information and belief, the Defendants' advertising is also false or misleading in that it fails to disclose that, for at least some of the appeals managed by the Defendant Tax Savers, clients are represented in hearings by individuals not possessing the requisite qualifications under § 194.034 of the Florida Statutes.

30.     This false advertising and/or omission is material to a client's decision, as the Defendants were required (but failed) to disclose that at least some clients would <u>not</u> be represented by individuals possessing the requisite qualifications under § 194.034 of the Florida Statutes (*e.g.* an attorney member of the Florida Bar, a real estate appraiser licensed under chapter 475, etc.)

***Defendants' Website is an "Interactive" Website That Affects Interstate Commerce***

31.     Courts have held that websites (such as taxsaversmiami.com) which allow customers to exchange information with a business are deemed "interactive" websites.

32.     The Defendants' false or misleading advertisements direct prospective clients (including out of state clients) to the Defendants' taxsaversmiami.com website, where they can enroll in Defendants' services.

33.    Defendants' website actively solicits commercial transactions with clients who reside both within and outside of the state of Florida, thereby affecting interstate commerce.

34.    As one example, out of state clients can "Request a Free Analysis" by submitting their contact information so that Defendants can "contact [the client] to complete the process:"



35.    Out of state clients can also click on the Defendants' "PAYMENT" tab – which is equivalent to the "shopping cart feature" on most e-commerce websites – and immediately pay any filing fees or invoices in connection with the Defendants' services:



*Defendants' False or Misleading Advertisements are Financially Motivated and Damaging*

36.     The false and misleading statements made by the Defendants regarding Defendants' products or services that affect interstate commerce have deceived, or have the tendency to deceive, the intended audience and consuming public about matters that are material to consumers' purchasing decisions. The foregoing false and misleading statements were also intended to harm Plaintiff's interests by seeking to persuade and misdirect customers and potential customers of Plaintiff's services to instead engage Defendants' services based on this false or misleading information.

37.     Each of the above misstatements or subversions of fact was undertaken willingly, knowingly, or recklessly by Defendants with the intention of increasing Defendants' profits at the expense of the consuming public and competitors.

38.     Upon information and belief, Defendants have knowingly and intentionally targeted Plaintiff's clientele with false or misleading advertisements, causing some of Plaintiff's clients to switch from Plaintiff's services in favor of those of Defendants, or to otherwise avoid retaining Plaintiff's services.

39.     All of Defendants' above-referenced false advertising and unfair and/or deceptive trade practices have caused, and will continue to cause, damage to Plaintiff.

40.     Defendants' above-referenced acts were deliberate, willful, and intentional violations of Plaintiff's rights, and were committed for the sole purpose of commercial gain.

*Defendants' Conduct Has Affected Interstate Commerce*

41.     Upon information and belief, the Defendants and/or their agents have disseminated their advertisements across state lines via both physical mail and the Internet. Such advertisements

and transmissions thereof are in the possession or control of Defendants and are being sought in discovery.

42.     The Defendants have provided their services to clients that reside outside of the State of Florida and/or with mailing or physical addresses outside Florida. Plaintiff is aware of several such clients, *see* **Exhibit B**, including a former client of Plaintiff's that resides in Arizona and whose Miami-Dade property has a market value of $7,000,000. Plaintiff has propounded discovery to obtain the full breadth of the Defendants' interstate mailings and business dealings.

43.     Upon information and belief, the Defendants and/or their agents have disseminated their advertisements across state lines via both physical mail and the Internet to prospective clients that reside outside of Florida and/or with mailing or physical addresses outside Florida. For example, the Defendants' mailings and website specifically target commercial property owners who, upon information and belief, reside *outside* the state of Florida, but nevertheless own property *inside* the state of Florida:



Such advertisements and transmissions thereof are in the possession or control of Defendants, and are being sought by the Plaintiff through discovery.

44.     Plaintiff is informed and believes that a considerable number of the properties represented by Defendants are owned by persons that reside outside of Florida and/or with permanent mailing or physical addresses outside Florida.

45.     Defendants, by the very admission of their statements on the website of Defendant Tax Savers, represent $5 billion in market value in Miami-Dade County and Broward County.  *See* **Exhibit C**. Defendants' services clearly affect interstate commerce by their impact on major real estate markets.

46.     Defendants' disseminated marketing (*e.g.*, **Exhibit A**) directs consumers back to www.taxsaversmiami.com (**Exhibit C**), where customers may effectuate remote payment, from any Internet-enabled device, of the fees and/or invoices generated by Defendants' services.  *See* paragraph 35 above.

47.     The acts of the Defendants complained of herein have caused and will continue to cause substantial and irreparable injury to Plaintiff unless such acts are restrained by this Court.

48.     Plaintiff has no adequate remedy at law.

## COUNT I

**VIOLATIONS OF SECTION 43(a) OF THE LANHAM ACT, 15 USC §1125(a),
UNFAIR COMPETITION, FALSE AND MISLEADING ADVERTISING**

**(Against all Defendants)**

49.     Plaintiff incorporates each and every allegation set forth in Paragraphs 1 through 48, including all subparts, as if fully set forth herein.

50.     Section 43(a) of the Lanham Act prohibits Defendants from using false and misleading descriptions of fact or other representations of fact which misrepresent the nature, characteristics, or qualities of their or another person's goods or services.

51.     Defendants' misleading and false statements regarding products or services that affect interstate commerce have deceived, or have the tendency to deceive, the intended audience and consuming public about matters that are material to those consumers' purchasing decisions. The foregoing false and misleading statements were also intended to harm Plaintiff's interests by seeking to persuade and misdirect customers and potential customers of Plaintiff's products not to purchase Plaintiff's services.

52.     Defendants have disseminated and continue to disseminate false and misleading statements regarding its products or services, both within and outside of Florida, via physical mail and the Internet.

53.     Defendants' false and misleading interstate advertising, as well as providing services to clients both in- and out-of-state based on those misrepresentations, affect interstate commerce in a manner which constitutes false advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

54.     Plaintiff has been damaged by the reliance of consumers upon Defendants' false and misleading statements.

55.     Defendants have reaped unjustified profits and have been unjustly enriched by their misstatements.

56.     The acts of the Defendants constitute unfair competition, and false or misleading advertising in violation of the federal Lanham Act, 15 U.S.C. § 1025(a).

57.     The aforesaid acts of the Defendants have harmed or will harm Plaintiff.

58.     The aforesaid acts of the Defendants have caused and will cause great and irreparable injury to Plaintiff, and unless said acts are restrained by this Court, they will be continued and Plaintiff will continue to suffer great and irreparable injury.

59.     Plaintiff has no adequate remedy at law unless the Court enjoins Defendants' false and misleading advertising.

WHEREFORE, Plaintiff prays that the Court grant the Prayer for Relief set forth below.

## COUNT II

### FALSE OR MISLEADING ADVERTISING IN VIOLATION OF FLORIDA STATUTE §817.41

### (Against all Defendants)

60.     Plaintiff incorporates each and every allegation set forth in Paragraphs 1 through 48, including all subparts, as if fully set forth herein.

61.     Fla. Stat. §817.41(1) provides that:

> [i]t shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement. Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses.

62.     The Defendants have made or disseminated, and continue to make or disseminate misleading advertising, including but not limited to the following:

a.  making the false or misleading claim in their advertising that, in 2023, Tax Savers had "an industry-leading **success rate of 85%** for properties valued at over $1 million across retail, multi-family, and industrial asset classes," when the actual success rate was nearly **30% lower** at 57.84%, as shown below:

| Property Type | Reduced Petitions | Total Petitions | Percentage in Miami-Dade | Reduced Petitions | Total Petitions | Percentage in Broward | Overall Percentage |
|---|---|---|---|---|---|---|---|

| | in Miami-Dade | in Miami-Dade | | in Broward | in Broward | | |
|---|---|---|---|---|---|---|---|
| **MULTI FAMILY** | 283 | 359 | 78.83% | 41 | 187 | 21.93% | 59.34% |
| **INDUSTRIAL** | 253 | 284 | 89.08% | 85 | 287 | 29.62% | 59.19% |
| **RETAIL** | 192 | 255 | 75.29% | 31 | 158 | 19.62% | 54.00% |
| **TOTAL** | 728 | 898 | 81.07% | 157 | 632 | 24.84% | |
| | | | | | | | |
| | | Overall percentage | 57.84% | | | | |

    b.  making the false or misleading claim in their advertising that, in 2023, Tax Savers had "an industry-leading **success rate of 70%** for properties valued at over $500,000 across single family, condominium, and multi-family asset classes," when the actual success rate was **over 20% lower** at 49.57%, as shown below:

| Property Type | Reduced Petitions in Miami-Dade | Total Petitions in Miami-Dade | Percentage in Miami-Dade | Reduced Petitions in Broward | Total Petitions in Broward | Percentage in Broward | Overall Percentage |
|---|---|---|---|---|---|---|---|
| **SINGLE FAMILY** | 239 | 533 | 44.84% | 91 | 210 | 43.33% | 44.41% |
| **CONDO** | 277 | 527 | 52.56% | 28 | 86 | 32.56% | 49.76% |
| **MULTI FAMILY** | 545 | 785 | 69.43% | 83 | 407 | 20.39% | 52.68% |
| **TOTALS** | 1,061 | 1,845 | 57.51% | 202 | 703 | 28.73% | |
| | | | | | | | |
| | | Overall Percentage | 49.57% | | | | |

    c.  making the false or misleading claim in their advertising that, in 2023, Tax Savers had "an industry-leading **success rate of 70%** with vacant land," when the actual success rate was between 4% and over 15% lower, as shown below:

| Property Type | Reduced Petitions in Miami-Dade | Total Petitions in Miami-Dade | Percentage in Miami-Dade | Reduced Petitions in Broward | Total Petitions in Broward | Percentage in Broward | Overall Percentage |
|---|---|---|---|---|---|---|---|
| **VACANT LAND** | 301 | 456 | 66.01% | 1 | 96 | 1.04% | 54.71% |

    d.  making the false or misleading claim in their advertising that Tax Savers has handled "250,000+ successful property tax appeals."

63.  The Defendants made one or more material misrepresentations of facts, including those referenced above.

64.  The Defendants knew or should have known of the falsity of the statements.

65.     The Defendants intended that the representations would induce another to rely and act on it.

66.     Plaintiff competes with Defendants in the offering of services in the property tax appeal business.

67.     As a consequence of Defendants' false and/or misleading advertising, Defendants have unlawfully induced consumers who justifiably relied on the advertised success rates and/or the number of successful property tax appeals into purchasing their services, and in turn have diverted sales from competitors including Plaintiff.

68.     The aforesaid acts of the Defendants have harmed or will harm Plaintiff.

69.     In addition to the harm caused to Plaintiff by Defendants' diversion of consumers to the Defendants, consumers have been harmed including because, upon information and belief, Defendants have inadequately represented consumers in property tax appeals through the use of at least one individual who is not legally qualified to engage in such representation. As such, the affected consumers are subject to inadequate representation and are deprived of a full property tax reduction as could be achieved via the services of Plaintiff, who *does* use legally authorized representatives.

70.     Defendants' misconduct has misled and injured consumers, and is likely to continue to mislead and injure consumers that are relying on the Defendants' advertisements, and has affected and will continue to affect those consumers' purchasing decisions or other conduct.

71.     The underlying misconduct has also injured the Defendants' clients, as those clients have a right to be free from false and/or misleading misrepresentations in connection with their purchasing decisions.

72.     Defendants' aforesaid acts constitute false advertising in violation of Florida law.

73.     The aforesaid acts of the Defendants have caused and will cause great and irreparable injury to Plaintiff, and unless said acts are restrained by this Court, they will be continued and Plaintiff will continue to suffer great and irreparable injury.

74.     Plaintiff has no adequate remedy at law unless the Court enjoins Defendants' false and misleading advertising.

WHEREFORE, Plaintiff prays that the Court grant the Prayer for Relief set forth below.

## COUNT III

### VIOLATION OF THE FLORIDA DECEPTIVE
### AND UNFAIR TRADE PRACTICES ACT
### (Fla. Stat. §501.201, et seq.)

### (Against all Defendants)

75.     Plaintiff incorporates each and every allegation set forth in Paragraphs 1 through 74, including all subparts, as if fully set forth herein.

76.     Defendants have engaged in unfair methods of competition, unconscionable acts or practices, and other unfair or deceptive practices in Florida, including but not limited to the following:

> a.  making the false or misleading claim in their advertising that, in 2023, Tax Savers had "an industry-leading **success rate of 85%** for properties valued at over $1 million across retail, multi-family, and industrial asset classes," when the actual success rate was nearly **30% lower** at 57.84%, as shown below:

| Property Type | Reduced Petitions in Miami-Dade | Total Petitions in Miami-Dade | Percentage in Miami-Dade | Reduced Petitions in Broward | Total Petitions in Broward | Percentage in Broward | Overall Percentage |
|---|---|---|---|---|---|---|---|
| MULTI FAMILY | 283 | 359 | 78.83% | 41 | 187 | 21.93% | 59.34% |
| INDUSTRIAL | 253 | 284 | 89.08% | 85 | 287 | 29.62% | 59.19% |
| RETAIL | 192 | 255 | 75.29% | 31 | 158 | 19.62% | 54.00% |
| TOTAL | 728 | 898 | 81.07% | 157 | 632 | 24.84% | |
| | | | | | | | |
| | Overall percentage | | 57.84% | | | | |

b. making the false or misleading claim in their advertising that, in 2023, Tax Savers had "an industry-leading **success rate of 70%** for properties valued at over $500,000 across single family, condominium, and multi-family asset classes," when the actual success rate was **over 20% lower** at 49.57%, as shown below:

| Property Type | Reduced Petitions in Miami-Dade | Total Petitions in Miami-Dade | Percentage in Miami-Dade | Reduced Petitions in Broward | Total Petitions in Broward | Percentage in Broward | Overall Percentage |
|---|---|---|---|---|---|---|---|
| SINGLE FAMILY | 239 | 533 | 44.84% | 91 | 210 | 43.33% | 44.41% |
| CONDO | 277 | 527 | 52.56% | 28 | 86 | 32.56% | 49.76% |
| MULTI FAMILY | 545 | 785 | 69.43% | 83 | 407 | 20.39% | 52.68% |
| TOTALS | 1,061 | 1,845 | 57.51% | 202 | 703 | 28.73% | |
| | | | | | | | |
| | Overall Percentage | | 49.57% | | | | |

c. making the false or misleading claim in their advertising that, in 2023, Tax Savers had "an industry-leading **success rate of 70%** with vacant land," when the actual success rate was **over 15% lower** at 54.71%, as shown below:

| Property Type | Reduced Petitions in Miami-Dade | Total Petitions in Miami-Dade | Percentage in Miami-Dade | Reduced Petitions in Broward | Total Petitions in Broward | Percentage in Broward | Overall Percentage |
|---|---|---|---|---|---|---|---|
| VACANT LAND | 301 | 456 | 66.01% | 1 | 96 | 1.04% | 54.71% |

d. making the false or misleading claim in their advertising that Tax Savers has handled "250,000+ successful property tax appeals."

77.     Defendants have engaged in false and misleading advertising including at least the above examples which were distributed in Florida for the purpose of inducing customers to use Defendants' property tax appeal services instead of those of Plaintiff or their other competitors.

78.     As a consequence of Defendants' false and/or misleading advertising, Defendants have unlawfully induced consumers into purchasing their services, and in turn have diverted sales from competitors including Plaintiff.

79. In addition to the harm caused by Defendants' diversion of consumers to their services, Defendants' unfair trade practices also harm consumers, as including because upon information and belief, Defendants have inadequately represented consumers in property tax appeals through the use of at least one individual who is not legally qualified to engage in such representation. As such, the affected consumers are subject to inadequate representation and are deprived of a full property tax reduction as could be achieved via the services of Plaintiff, who *does* use legally authorized representatives.

80. Defendants' misconduct has misled and injured consumers, and is likely to continue to mislead and injure consumers that are relying on the statements on Defendants' website and other advertisements, and has affected and will continue to affect those consumers' purchasing decisions or other conduct.

81. The underlying misconduct has also injured the Defendants' clients, as those clients have a right to be free from false and/or misleading misrepresentations in connection with their purchasing decisions.

82. Defendants' aforesaid acts constitute unfair acts or practices in violation of Florida law.

83. The aforesaid acts of the Defendants have harmed or will harm Plaintiff, and have caused actual damages, including but not limited to lost business and lost profits.

84. The aforesaid acts of the Defendants have caused and will cause great and irreparable injury to Plaintiff, and unless said acts are restrained by this Court, they will be continued and Plaintiff will continue to suffer great and irreparable injury.

85. Plaintiff has no adequate remedy at law unless the Court enjoins Defendants' unfair trade practices.

WHEREFORE, Plaintiff prays that the Court grant the Prayer for Relief set forth below.

## COUNT IV

**TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS**

**(Against all Defendants)**

86.     Plaintiff incorporates each and every allegation set forth in Paragraphs 1 through 48, including all subparts, as if fully set forth herein.

87.     This is an action for tortious interference with advantageous business relationships, and is <u>not</u> based on a relationship (or relationships) with the community at large, nor is it based on an existing or prospective relationship with each and every property owner in the state of Florida.

88.     Rather, Plaintiff has established and valuable business relationships with its clients (examples of which are reflected at https://propertytaxconsultants.com/clients/), as well as business relationships with prospective clients in the market of South Florida who seek (or are likely to have a need for) professional services in the business of property tax assessment appeals (the "Specific Class of Clients").

89.     Plaintiff's Specific Class of Clients either expressed interest in transacting business and/or transacted business with the Plaintiff. As a result, Plaintiff enjoyed advantageous business relationships with these customers, which carried the probability of future economic benefit to the Plaintiff.

90.     Defendants are direct competitors of the Plaintiff, and have knowledge of Plaintiff's existing and prospective business relationships (including those composing the Specific Class of Clients).

91.     Defendants have knowingly and intentionally interfered with Plaintiff's existing and prospective business relationships by improper methods and through improper means

including the publication, circulation, dissemination, and repetition of false, misleading, and unfair advertising or promotion as a means of enticing Plaintiff's existing and prospective clients (including the Specific Class of Clients), to switch from Plaintiff's services in favor of those of Defendants, or to otherwise avoid retaining Plaintiff's services.

92.     Plaintiff has propounded documents requests and interrogatories on the Defendants, and the full scope of the Defendants' unlawful interference with the Specific Class of Clients will be revealed through discovery.

93.     While Plaintiff believes that its relationships with a certain number of the Specific Class of Clients has been severed due to the Defendants' unlawful acts, the case law in Florida and within the Eleventh Circuit does not require the relationship to be breached or otherwise severed.

94.     The aforesaid acts of the Defendants have damaged the Plaintiff, and will continue to harm Plaintiff.

95.     The aforesaid acts of the Defendants have caused and will cause great and irreparable injury to Plaintiff, and unless said acts are restrained by this Court, they will be continued and Plaintiff will continue to suffer great and irreparable injury.

96.     Plaintiff has no adequate remedy at law unless the Court enjoins Defendants' tortious activities.

WHEREFORE, Plaintiff prays that the Court grant the Prayer for Relief set forth below.

<div align="center">

**<u>PRAYER FOR RELIEF</u>**

</div>

WHEREFORE, Plaintiff prays:

A.     That this Court will adjudge that the Defendants have engaged in false or misleading advertising and acts of unfair competition, in violation of Plaintiff's rights under the

Lanham Act, 15 U.S.C. §1051 et seq., under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, et seq., and under § 817.41, Fla. Stat.;

B.      That this Court will adjudge that Defendants have engaged in acts of tortious interference with advantageous business relationships, in violation of the common law of Florida;

C.      That Defendants and all of Defendants' officers, directors, agents, servants, employees, attorneys, successors, and assigns, and all persons in active concert or participation therewith, be permanently enjoined and restrained:

      1.      From making or disseminating the false or misleading claims that are the subject of this action, or other similar claims that are false or misleading in violation of federal or state law; and

      2.      From making or disseminating the false or misleading advertisements that are the subject of this action, or other similar advertisements that are false or misleading in violation of federal or state law.

D.      That Defendants be directed to file with this Court and to serve upon Plaintiff within thirty (30) days after service of the injunction issued in this action, a written report under oath, setting forth in detail the manner of compliance with such order.

E.      That Plaintiff have and recover Defendants' profits and the damages of Plaintiff arising from Defendants' acts of unfair competition and false advertising, and that the Court, pursuant to §35 of the Lanham Act, enter judgment, and that said sum be trebled as authorized pursuant to 15 U.S.C. § 1117(a).

F.      That Plaintiff have and recover such sums as are necessary to place or compensate for corrective advertising.

G.      That Plaintiff have and recover nominal damages.

H. That Plaintiff have and recover punitive damages, pursuant to the laws of the State of Florida, including without limitation under § 817.41(6) and/or the common law, in addition to actual damages and/or nominal damages.

I. That Plaintiff have and recover both pre-judgment and post-judgment interest on each and every damage award.

J. That Plaintiff be entitled to injunctive relief as set forth in §34 of the Lanham Act, 15 U.S.C. § 1116.

K. That Plaintiff have and recover the remedies set forth in §35 of the Lanham Act, 15 U.S.C. §§1117.

L. That Plaintiff have and recover the remedies set forth in §36 of the Lanham Act, 15 U.S.C. §§1118.

M. That the Court award an accounting of Defendants' profits from the sale and/or fees generated in connection with the use of the claims or advertisements that are the subject of this action, through trial or final adjudication.

N. That Plaintiff have and recover its reasonable attorney's fees incurred in this action, pursuant to §35 of the Lanham Act, 15 U.S.C. §1117, pursuant to § 501.2105 of the Florida Statutes, pursuant to § 817.41(6) of the Florida Statutes, and/or as otherwise authorized.

O. That Plaintiff have and recover its taxable costs and disbursements herein, pursuant to §35 of the Lanham Act, 15 U.S.C. §1117, pursuant to § 501.2105 of the Florida Statutes, pursuant to § 817.41(6) of the Florida Statutes, and/or as otherwise authorized.

P. That Plaintiff have and recover such further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues triable of right by a jury.

Dated: January 13, 2025                                    Respectfully submitted,

<div style="margin-left:50%">

Oliver Alan Ruiz
John Cyril Malloy, III
Florida Bar No. 964,220
jcmalloy@malloylaw.com
Oliver Alan Ruiz
Florida Bar No. 524,786
oruiz@malloylaw.com
Jonathan R. Woodard
Florida Bar No. 0096553
jwoodard@malloylaw.com
Maximillian Scott Matiauda
Florida Bar No. 1,038,639
mmatiauda@malloylaw.com
**MALLOY & MALLOY, P.L.**
2800 S.W. Third Avenue
Miami, Florida 33129
Telephone (305) 858-8000

*Attorneys for Plaintiff*

</div>